Filed 11/5/14  Scott v. Promesa Behavioral Health CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CRYSTAL SCOTT,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>PROMESA BEHAVIORAL HEALTH,<br><br>    Defendant and Respondent. | F067241<br><br>(Super. Ct. No. 11CECG03193)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

Doyle & Schallert, David Douglas Doyle and Mark M. Schallert for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Jesse J. Maddox and Erik M. Cuadros for Defendant and Respondent.

-ooOoo-

Plaintiff sued her former employer alleging pregnancy discrimination based on defendant's termination of her employment three weeks after she revealed her pregnancy. Defendant filed a motion for summary judgment, asserting it had legitimate, nondiscriminatory reasons for termination of plaintiff's employment.  The motion was granted on the ground plaintiff had not raised a triable issue of material fact regarding whether defendant's stated reasons for termination were actually a pretext for unlawful discrimination.  We find no error in the judgment and affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff sued defendant, her former employer, for discriminating against her on the basis of pregnancy. She alleged she informed defendant of her pregnancy and three weeks later she was terminated. Defendant moved for summary judgment, asserting it had valid, nondiscriminatory reasons for terminating plaintiff's employment and plaintiff had no substantial evidence that her termination was motivated by discriminatory intent. The trial court granted the motion for summary judgment and plaintiff appeals. The following evidence was presented in support of and opposition to defendant's motion.

In August 2010, plaintiff was hired by defendant to work as a child care worker I in a group home for troubled teenagers. She was initially assigned to work in a home known as Niles 5, where Charmaine Linley was the administrator and Vanessa Reyes was the house manager and plaintiff's supervisor. Reyes periodically completed supervision notes to provide employees with feedback on their work performance. Supervision notes Reyes prepared for plaintiff in November and December 2010 advised her to improve on building bonds with residents, deescalating situations, and multitasking; they contained comments about an "inappropriate note in staff communication and power struggling," the need to take breaks away from residents, and taking "a breather" when she felt herself becoming frustrated.[1]

In late December 2010 or early January 2011, plaintiff sent an e-mail to Linley and to Jodee Romero, defendant's human resources director, complaining that Reyes was

---

[1]     A supervision note dated August 12, 2010, was also presented. It rated plaintiff's staff interactions as "[n]eeds improvement," commenting: "There should not be any talking about issues in the facility where the clients can overhear this information. All interactions need to be professional. If you have an issue with someone, you need to appropriately talk to that staff or manager away from the clients." It also noted, "Proper chain of command needs to be followed." The supervision note was apparently incorrectly dated, however, because plaintiff did not begin her employment with defendant until August 25, 2010.

2

harassing her and retaliating against her by blaming things on her. Romero investigated plaintiff's complaint against Reyes and concluded it was unfounded.

In January 2011, plaintiff was reassigned to a group home called Minarets because of problems she was having with the people at Niles 5. Plaintiff understood she was being given a fresh start. Mary Krahn was the administrator and Jacqueline Wendt was the house manager at Minarets.

On January 18, 2011, plaintiff was given an ethics/policy violation notice, which indicated it was a "final warning." It stated plaintiff violated agency policy by "failing to be courteous and polite at all times to other employees and customers" and "[q]uestioning directives from proper authority." The notice warned that "Future violations in reference to will result in termination of employment." (*Sic.*) Plaintiff understood the final warning to be "[o]ne step before being fired."

Reyes completed an annual performance appraisal for plaintiff dated January 25, 2011, which covered the period up to December 31, 2010. It reflected plaintiff met standards in 10 of the 11 categories. In the remaining category, "Service Orientation," she received a "Below Standards" rating. The supportive comments for that category stated: "Crystal is struggling with getting positive results out of difficult situations. She is courteous and friendly but the clients dog her." The performance goals for that category state: "Crystal should continue to build a bond with each client and test out different methods of handling adverse situations."

On March 11, 2011, plaintiff informed Krahn that she was pregnant. Krahn responded by stating, "[O]h, wow, that was fast, oh, my God." Plaintiff understood her to mean plaintiff became pregnant fast after getting married. Plaintiff began to suffer from morning sickness. On March 29, 2011, when plaintiff was vomiting outside the group home, Wendt commented that hopefully plaintiff "would not have to deal with that for too much longer"; plaintiff understood her to be referring to the vomiting.

3

On March 16, 2011, plaintiff received a supervision note from Wendt; it reflected "client report cell phone usage and cursing [were] discussed." Plaintiff admitted using the term "shit" at times, but stated she "would be more mindful." An additional note stated: discussed "demeanor, tone of voice, clients state Crystal is often 'mean' 'angry' 'in bad mood.' Crystal aware of this and will be more mindful." In mid to late March 2011, Romero received written grievances from residents of Minarets, which accused plaintiff of being mean and punitive and making inappropriate remarks to them. On March 30, 2011, Romero received information from plaintiff's coworkers about other inappropriate comments plaintiff made to residents; coworkers also reported plaintiff had difficulty getting residents to comply with directives and would engage in power struggles with them.

Romero and defendant's CEO, Lisa Weigant, made the decision to terminate plaintiff's employment. On March 30, 2011, they discussed the matter. They considered the grievances received from residents, the March 16, 2011, supervision notes, the reports by employees of impolite or discourteous comments, and plaintiff's pattern of unprofessional interactions with staff and residents. At the time, Weigant was not aware plaintiff was pregnant; plaintiff had discussed her pregnancy in Romero's presence on March 29, 2011. On April 1, 2011, Romero informed plaintiff her employment was being terminated. Plaintiff asserts she was given no reason for her termination at that time.

Defendant offered additional facts about its business and its employees: defendant provides assistance to pregnant teens and teen parents; at the time of plaintiff's termination, 119 of its 152 employees were women; four of its six entry-level management positions, all five of its mid-level management positions, and four of its five executive management positions were held by women; in the past three and a half years, 13 of its employees had taken pregnancy disability leave, and two were on pregnancy

4

leave at the time of the motion; and, while Romero has been human resources director, no employees except plaintiff have been fired from their employment while pregnant.

## *DISCUSSION*

### I.     Standard of Review

Summary judgment must be granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  On appeal, "[w]e determine de novo whether a triable issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law.  [Citation.]"  (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139 (*Alexander*).)  "As a summary judgment motion raises only questions of law regarding the construction and effect of supporting and opposing papers, this court independently applies the same three-step analysis required of the trial court. We identify issues framed by the pleadings; determine whether the moving party's showing established facts that negate the opponent's claim and justify a judgment in the moving party's favor; and if it does, we finally determine whether the opposition demonstrates the existence of a triable, material factual issue.  [Citations.]" (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342.)

### II.     Expert Declarations

In opposition to defendant's motion, plaintiff submitted the declarations of Robert Fain, a former foster parent, and Jules Confino, a licensed psychologist who has worked in residential treatment homes and treated foster children as patients.  Both declarations were offered as expert opinion and both declarants opined that the type of conduct set out in defendant's separate statement of undisputed facts as the basis for terminating plaintiff's employment constituted routine interaction between a foster child and a foster parent or worker and was not cause for termination of a foster parent.  Defendant objected to much of the content of the declarations, and the trial court sustained those

5

objections.  Plaintiff asserts the evidence should have been admitted.  Evidentiary rulings are reviewed for abuse of discretion.  (*Alexander, supra,* 104 Cal.App.4th at p. 140, fn. 3.)

"It is a fundamental rule of appellate review that the judgment appealed from is presumed correct and ""'all intendments and presumptions are indulged in favor of its correctness.'" [Citation.]' [Citation.]  An appellant must provide an argument and legal authority to support his contentions."  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)  "'[E]very brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.  [Citations.]' [Citation.]"  (*Mission Shores Assn. v. Pheil* (2008) 166 Cal.App.4th 789, 796.)

In her opening brief, plaintiff contends the expert evidence should not have been excluded.  She devotes five sentences to the argument, asserting the excluded evidence was relevant to the subject matter, should have been admitted, and should have been construed in the light most favorable to plaintiff.  The discussion in her reply brief also simply asserts, without citation of authority, that the evidence contained in the declarations was relevant.

Defendant raised a number of objections to specified portions of the declarations; the objections were not limited to relevancy objections.  The trial court sustained defendant's objections.  Plaintiff did not proffer reasoned argument supported by citation of authority why defendant's objections to the Fain and Confino declarations were invalid or should not have been sustained.  Plaintiff has not established any abuse of discretion in the trial court's evidentiary rulings.

## III.    Pregnancy Discrimination

The single cause of action of plaintiff's complaint alleged violation of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA).  The FEHA

6

prohibits an employer from discharging an employee because of sex, which includes pregnancy or medical conditions related to pregnancy. (Gov. Code, §§ 12940, subd. (a), 12926, subd. (r).) Generally, the elements of a prima facie case of discrimination under the FEHA are: (1) plaintiff was a member of a protected class, (2) plaintiff was qualified for the position he or she sought or was performing competently in the position he or she held, (3) plaintiff suffered an adverse employment action, such as termination, and (4) some other circumstance suggests a discriminatory motive. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*).)

When direct evidence of an employer's discriminatory intent is not available, a "three-stage burden-shifting" test is used to determine whether intentional discrimination motivated the employer's action. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214 (*Harris*); *Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740, 754 (*Johnson*).) "[A] plaintiff has the initial burden to make a prima facie case of discrimination by showing that it is more likely than not that the employer has taken an adverse employment action based on a prohibited criterion. A prima facie case establishes a presumption of discrimination. The employer may rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason. If the employer discharges this burden, the presumption of discrimination disappears. The plaintiff must then show that the employer's proffered nondiscriminatory reason was actually a pretext for discrimination, and the plaintiff may offer any other evidence of discriminatory motive. The ultimate burden of persuasion on the issue of discrimination remains with the plaintiff." (*Harris,* at pp. 214-215.)

### A.     *Defendant's showing*

When a defendant moves for summary judgment in a case alleging discrimination under the FEHA, instead of or in addition to challenging the plaintiff's ability to make a prima facie case of discrimination, the defendant may proceed directly to the second step

of the analysis and present competent, admissible evidence of its nondiscriminatory reasons for terminating the plaintiff's employment. (*Guz, supra*, 24 Cal.4th at pp. 357, 360.) If the defendant's burden is met, the burden shifts to the plaintiff to present substantial evidence the employer's proffered nondiscriminatory reason was untrue or pretextual, or evidence of discriminatory intent. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004-1005 (*Hersant*).)

The employer's burden is to produce admissible evidence, sufficient, if taken as true, to justify a judgment in favor of the employer that its action was taken for a legitimate, nondiscriminatory reason. (*Guz, supra*, 24 Cal.4th at pp. 355-356.) A legitimate reason is one facially unrelated to prohibited bias. (*Id*. at p. 358.)

In its motion, defendant presented substantial evidence of a legitimate, nondiscriminatory reason for termination of plaintiff's employment, sufficient to sustain a judgment in its favor. The supervision notes provided to and discussed with plaintiff, while generally good, reflected the need to improve on building bonds with residents, deescalating situations involving residents, avoiding power struggles, and maintaining professional interactions with residents and staff. Her annual review, for the period ending December 31, 2010, rated her below standards in service orientation; it noted she was "struggling with getting positive results out of difficult situations" and advised her "to build a bond with each client and test out different methods of handling adverse situations." Plaintiff complained her supervisor, Reyes, was harassing her; plaintiff acknowledged she was reassigned to a different group home in January 2011 due to problems with people at Niles 5, presumably including Reyes.

In January 2011, plaintiff received a final warning about unprofessional conduct, which advised her that future violations would result in termination of employment. In mid-March 2011, several residents presented grievances against plaintiff, complaining of her bad attitude, meanness, cursing, inappropriate comments, and punitive actions. On

8

March 16, 2011, plaintiff received a supervision note that reflected a discussion of cell phone usage and cursing; plaintiff acknowledged using the word "shit" at times and being moody because of hormones. The supervision note also addressed demeanor and tone of voice because residents were complaining that plaintiff was often mean, angry, and in a bad mood.

Romero received information from plaintiff's coworker about inappropriate remarks plaintiff made to residents, which upset the residents. An e-mail from Suzi Cantrell to Krahn and Wendt, dated March 30, 2011, related several incidents involving plaintiff. Several days before the e-mail, a resident had confronted plaintiff about plaintiff allegedly saying she wished the resident would leave. Plaintiff denied making the statement and told the resident: "I'm not worried about you," "when I clock out I get to go home and you don't," and "your [*sic*] just a child and I'm grown and adults don't worry about the same things children do." Subsequently, when another resident came to the door and asked to speak to plaintiff, plaintiff responded, "what do you want?" On another occasion, plaintiff stated she would not make the meatloaf for dinner and would have a resident make it because the smell of the meat made her sick. Cantrell said she would be back in an hour and a half and would cook dinner then. When Cantrell returned, the meatloaf was in the oven, and a resident stated plaintiff had made her prepare it; the residents were upset and did not eat much of the meatloaf, which was not properly seasoned. In another incident, a resident told Cantrell she thought plaintiff was mad at her; the resident had asked plaintiff to help her find her water bottle and plaintiff had responded, "No, that's not my job." Cantrell observed the resident seemed distressed. Plaintiff's coworkers also reported to Romero that plaintiff had difficulty getting residents to comply with directives and engaged in power struggles with residents. Romero consulted Weigant and they made the decision to terminate plaintiff's employment; both stated they did so based on plaintiff's pattern of unprofessional

9

interactions with defendant's staff and residents. Weigant was not aware of plaintiff's pregnancy at the time the decision was made.

Defendant met its burden of producing admissible evidence which, if taken as true, was sufficient to justify a judgment in its favor on the ground it acted for a legitimate, nondiscriminatory reason.

### B. Plaintiff's showing

When the employer has met its burden of producing evidence of a legitimate, nondiscriminatory reason for its employment action, to withstand summary judgment, the employee "must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." (*Hersant*, *supra*, 57 Cal.App.4th at pp. 1004-1005.) "The employee must do more than raise an issue whether the employer's action was unfair, unsound, wrong or mistaken, because the overriding issue is whether discriminatory animus motivated the employer. [Citation.]" (*Johnson, supra,* 173 Cal.App.4th at p. 755.) "'It is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case.' [Citation.]" (*Id.* at p. 757.)

In attempting to raise a triable issue of fact regarding whether defendant's stated reason for plaintiff's termination was untrue or a pretext for unlawful discrimination, plaintiff suggests an inference of discriminatory intent may be drawn from the timing of her termination. Plaintiff notes she was terminated just a few weeks after she told coworkers she was pregnant. Where plaintiff relies on "inferences rather than direct evidence to create a factual dispute on the question of motive, a material triable controversy is not established unless the inference is reasonable." (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038 (*Cucuzza*).) "[A]n inference is a

10

deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) "[A]n inference is reasonable if, and only if, it implies the unlawful motive is more likely than defendant's proffered explanation." (*Cucuzza,* at p. 1038.) We note, however, that "the timing of an adverse employment action is not, by itself, sufficient to raise an inference that an employer took such action for an unlawful purpose." (*Johnson*, *supra*, 173 Cal.App.4th at p. 757.)

Plaintiff also attempted to show defendant's proffered reasons for her termination were a pretext by pointing to evidence that defendant initially gave no reason for her termination, then later cited unprofessional conduct. Plaintiff stated in her declaration that Romero told her at the time of her termination that she was being terminated as an at-will employee. After plaintiff repeatedly and unsuccessfully asked for a reason, plaintiff asked, "then you're firing me for no reason?" Romero responded, "that's right," "or words to that effect." Plaintiff argues it was only after she applied for unemployment benefits that defendant asserted she was terminated for cause, but she cites no supporting evidence and her separate statements of undisputed material facts contain no facts or evidence to support that assertion.

"[O]ne cannot reasonably draw an inference of intentional discrimination solely from evidence that an employer lied about its reasons for taking an adverse employment action. 'The pertinent statutes do not prohibit lying, they prohibit discrimination.' [Citation.] While a circumstantial case of discrimination may be "'considerably assist[ed]'" by proof that the employer's stated reasons are not worthy of belief 'because it suggests the employer had cause to hide its true reasons,' '[s]till, there must be evidence supporting a rational inference that intentional discrimination, on grounds prohibited by the statute, was the true cause of the employer's actions.' [Citation.]" (*Johnson*, *supra*, 173 Cal.App.4th at p. 758.) Likewise, failing to give an employee any

11

explanation at all for the termination will not, by itself, support an inference of intentional discrimination. (*Ibid*.) Thus, defendant's choice to initially decline to state a reason for terminating plaintiff, an at-will employee, does not, by itself, support an inference of intentional discrimination.

Plaintiff also seeks to cast doubt on the truth of defendant's stated reasons for her termination by asserting the overall reviews of her work performance were good, and the conduct defendant determined was unprofessional was trivial and not sufficient to justify termination. To the extent she relies on her expert declarations to establish that the challenged conduct was not misconduct, her reliance is misplaced. In reviewing a motion for summary judgment, "we do not consider evidence 'to which objections have been made and sustained.' [Citation.]" (*Alexander, supra,* 104 Cal.App.4th at p. 139.) The trial court sustained defendant's objections to the expert declarations and plaintiff has not demonstrated the trial court abused its discretion by doing so. Accordingly, we will not consider the evidence in those declarations to which the trial court sustained objections. Reliance on plaintiff's own declaration to establish she did not engage in misconduct or unprofessional conduct is also unavailing. "[A]n employee's subjective personal judgments of his or her competence alone do not raise a genuine issue of material fact. [Citation.]" (*Horn v. Cushman & Wakefield Western Inc.* (1999) 72 Cal.App.4th 798, 816 (*Horn*).) Likewise, an employee's subjective personal judgments about whether his or her conduct constituted misconduct or unprofessional conduct justifying termination do not, by themselves, raise a triable issue of material fact.

Further, the question is not whether defendant was correct in evaluating plaintiff's work performance or deciding to terminate her employment. "Unless at-will employers are to be held to a good-cause standard for termination, no inference of discrimination can reasonably be drawn from the mere lack of conclusive evidence of misconduct by the employee." (*McGrory v. Applied Signal Technology, Inc*. (2013) 212 Cal.App.4th 1510,

12

1533 (*McGrory*).) "It is not enough for the employee simply to raise triable issues of fact concerning whether the employer's reasons for taking the adverse action were sound. What the employee has brought is not an action for general unfairness but for [pregnancy] discrimination." (*Hersant, supra,* 57 Cal.App.4th at p. 1005.) "'The [employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. [Citations.] Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [the asserted] non-discriminatory reasons." [Citations.]' [Citations.]" (*Ibid.*) Plaintiff did not present evidence demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions'" in defendant's reasons for terminating plaintiff's employment. (*Ibid.*)

Defendant presented facts and evidence demonstrating plaintiff's performance reviews, even before she informed her coworkers of her pregnancy, reflected a need to improve her interactions with coemployees and residents. Plaintiff was given a final warning, almost two months prior to the time she informed her coworkers of her pregnancy, advising that future violations would result in termination. In the final month before plaintiff's termination, Romero received grievances from several residents, complaining of plaintiff's conduct toward them, and an e-mail from Cantrell containing information about inappropriate comments plaintiff made to the residents. Defendant also submitted evidence that its workforce is primarily female, other employees have taken pregnancy disability leave, and no other employee has been terminated while pregnant.

Plaintiff did not deny engaging in the alleged unprofessional conduct or offer evidence refuting defendant's evidence; she merely offered her own declaration, conceding she "may have used the word 'shit' several times in reference to being sick to [her] stomach due to the morning sickness and the fact that [she] was about to vomit" and asserting she "observed other workers engaging in the same type of interaction with the residents that [she] was accused of engaging in," including the use of profanity. Plaintiff's declaration asserted, "According to defendants, I was given a fresh start when I was assigned to Minarets group home." Based on this statement, she argues evidence of events prior to her "fresh start" should not be considered in determining the true reasons for her termination. Plaintiff offers no evidence that this fresh start was intended by defendant to wipe the slate clean and preclude defendant from relying on plaintiff's prior conduct in determining whether to discipline her or terminate her employment. Plaintiff was reassigned to Minarets sometime in January 2011. The final warning that any further violations of defendant's conduct standards would result in termination was given on January 18, 2011. Thus, in the same time period plaintiff contends she was given a fresh start, she was also given the final warning. Thus, in light of all the evidence, it cannot be reasonably inferred from the general statement that plaintiff was being given a fresh start that defendant was excusing all prior unprofessional or inappropriate conduct, or agreeing not to consider it thereafter in evaluating plaintiff's work performance.

At best, plaintiff's evidence merely challenges the wisdom of defendant's decision to terminate her employment. She has not presented evidence sufficient to show defendant's stated reasons for plaintiff's termination were so weak, implausible, or contradictory as to suggest they were fabricated to cover a discriminatory motive.

Plaintiff also seeks to raise an inference defendant's reasons for terminating plaintiff were contrived by asserting Romero solicited negative information from Cantrell; she points to Cantrell's e-mail regarding plaintiff's conduct, which begins: "*As*

14

*requested*, this letter is to confirm the inappropriate behavior witnessed by staff member Crystal Scott with a few of the clients." (Italics added.) The e-mail, however, is addressed to Krahn and Wendt, not to Romero or Weigant, who made the decision to terminate plaintiff's employment. There is no evidence Romero or Weigant asked for the e-mail or any of the information it contained.

Plaintiff relies on comments by Krahn and Wendt as evidence of defendant's discriminatory intent. When plaintiff informed Krahn she was pregnant, Krahn responded, "[O]h, wow that was fast, oh, my God." Plaintiff understood Krahn to mean plaintiff became pregnant fast after getting married. Subsequently, on March 29, 2012, plaintiff's last day at work, she went outside to vomit because she was suffering from morning sickness and the bathrooms were occupied; Wendt saw her and stated that hopefully plaintiff "would not have to deal with that for too much longer."[2] Plaintiff understood her to mean she hoped plaintiff did not have to deal with vomiting much longer. Plaintiff stated she found both Krahn's and Wendt's comments rude.

While these comments may have been rude, as plaintiff suggests, they were not overtly discriminatory. The first simply expressed surprise at how soon plaintiff had become pregnant after marrying. It was not derogatory and did not convey a negative animus toward pregnancy or pregnant employees. The latter comment was ambiguous; it could have been an expression of sympathy for plaintiff's plight or distaste for vomiting. Neither comment, however, was made by Romero or Weigant, the persons responsible for the decision to terminate plaintiff's employment. Neither comment was made as part of the process of making the decision to terminate plaintiff's employment.

Considering all of plaintiff's proffered evidence together, we conclude she may have raised an issue regarding whether defendant's decision to terminate her employment

---

[2]     Throughout her opening brief, plaintiff argues it was Romero who made this comment. In her reply brief, plaintiff acknowledged the error, and conceded it was not Romero who made the remark.

15

was sound and based on valid reasons, but she did not raise a triable issue of material fact regarding whether defendant terminated her employment because of her pregnancy. In similar cases, courts have held that the employee failed to offer substantial evidence of a discriminatory animus, sufficient to raise a triable issue of material fact.

In *Horn, supra,* 72 Cal.App.4th 798, the plaintiff worked for the defendant, a commercial real estate company. In performance evaluations, the plaintiff was rated "exceeds expectations," but given comments suggesting he needed more effort and involvement in advertising, communications, and public relations. (*Id.* at p. 803.) The defendant underwent a company-wide reorganization. The plaintiff's employment was terminated and a younger man was given his restructured position. The plaintiff sued for age discrimination. (*Id.* at p. 804.)

On the defendant's motion for summary judgment, the defendant met its burden of producing substantial evidence of a legitimate, nondiscriminatory reason for the plaintiff's termination: his position was restructured to focus on public relations, and the plaintiff was not the best fit for the restructured position. (*Horn, supra*, 72 Cal.App.4th at p. 807.) The court concluded the evidence submitted by the plaintiff in response was insufficient to constitute substantial evidence that raised a triable issue of fact regarding whether the employer was motivated by discriminatory animus. (*Id.* at pp. 803, 809-810.) Although the plaintiff's supervisor discussed terminating his employment with the defendant's national communications director prior to the termination, it was the supervisor who made the decision. The national communications director's remark to the plaintiff, after he notified her of an important development by mail, that "'[t]his is 1994, haven't you ever heard of a fax before?'" was "highly ambiguous as far as discriminatory animus and … was not made in the context of [the plaintiff's] termination." (*Id.* at pp. 803, 809.)

In *Hersant, supra,* 57 Cal.App.4th 997, the plaintiff sued his employer and his supervisor, Davis, for age discrimination after he was demoted from his management position. (*Id*. at p. 1000.) The defendant filed a motion for summary judgment asserting the plaintiff was demoted due to unsatisfactory job performance. The defendant cited specific instances of improper conduct by the plaintiff, and statistical information about the age range of its managers. (*Id*. at pp. 1000-1001.) The plaintiff responded with evidence the charges of misconduct were false and another manager had also had problems with Davis. (*Id*. at pp. 1007-1009.) That manager had retired earlier than planned because he believed he was being harassed and micromanaged by Davis; Davis also seemed concerned about his hearing and his health in general. (*Id*. at p. 1009.)

The court concluded the plaintiff failed to present substantial evidence that the defendant's reasons for demoting the plaintiff were pretextual and motivated by discriminatory animus. (*Hersant, supra,* 57 Cal.App.4th at p. 1009.) The court stated: "Hersant raised triable issues concerning whether the actions of [the defendant] were reasonable and well considered. A trier of fact could find either they were or they were not. What a trier of fact could not reasonably conclude, however, was that [the defendant's] stated reasons were implausible, or inconsistent or baseless; it would not be reasonable to conclude they were pretextual and used merely to veil an act of age discrimination." (*Ibid*.) The plaintiff's attempt to attribute Davis's claimed harassment and ill treatment of the plaintiff and the other manager to age discrimination was simply speculation. (*Ibid*.)

In contrast, in *Johnson*, the court found the plaintiff presented sufficient evidence to raise a triable issue of material fact regarding discriminatory animus. (*Johnson, supra*, 173 Cal.App.4th 740.) There, the plaintiff was employed by the defendant as a caregiver for disabled adults. (*Id*. at pp. 745, 748.) On her doctor's orders, she took a week of leave for bed rest in connection with her pregnancy. (*Id*. at p. 746.) On the day she

17

returned to work, her employment was terminated. (*Id*. at p. 747.) When the defendant moved for summary judgment, it contended the plaintiff was terminated for falsifying time records to indicate she had worked with a particular client in his home when she had not been present on that day. (*Ibid*.) There was conflicting evidence regarding whether the plaintiff worked with the client on the day in dispute and whether her job performance in general was satisfactory. (*Id*. at pp. 748-752.) The plaintiff presented evidence that one of the defendant's management employees, who participated with the plaintiff's supervisor in the decision to terminate plaintiff's employment, stated in a deposition that a pregnant employee posed safety concerns to herself and her clients. (*Id*. at p. 756.)

The court concluded that neither the proximity between the time the plaintiff informed the defendant of her pregnancy, and took leave because of it, and the time she was terminated, nor the defendant's declining to state a reason at the time of termination, was alone sufficient to constitute substantial evidence of pretext, lack of good faith, or discriminatory animus. (*Johnson, supra*, 173 Cal.App.4th at pp. 757-758.) However, considered along with the manager's expressed concern about having pregnant employees caring for clients, and with the declarations of other former employees of the defendant, who stated they were supervised by the same people as the plaintiff and were fired when they became pregnant, there was substantial evidence to raise a triable issue of material fact as to the actual reasons for the plaintiff's termination. (*Id*. at p. 759.)

Unlike *Johnson*, in this case there was no evidence anyone who participated in the decision to terminate plaintiff's employment expressed concerns about a pregnant employee's ability to carry out her job duties. There also was no evidence other employees had been fired when they became pregnant. On the contrary, there was evidence no employee other than plaintiff was terminated while pregnant.

18

Plaintiff's employment was terminated three weeks after she told coemployees about her pregnancy. That termination also occurred two months after she was given a final warning[3] that any further violations of defendant's standards of conduct would result in termination. Defendant initially declined to state a reason for terminating the employment of plaintiff, an at-will employee; it later cited unprofessional conduct as the reason. Plaintiff did not deny receiving supervision notes and a performance review reflecting the need to improve her interactions with other employees and residents. She did not deny making the statements attributed to her in Cantrell's e-mail or in the residents' grievances. She admitted using profanity at times. She conceded she received the final warning and understood it to be the last step before being fired. She argued that her conduct did not constitute unprofessional conduct sufficient to justify termination of employment. As evidence of a discriminatory motive, she pointed to Krahn's comment regarding how quickly she had become pregnant after she married and Wendt's comment that she hoped plaintiff did not have to deal with vomiting too much longer.

The ultimate question when an employee alleges discrimination under the FEHA is whether the employer intentionally discriminated against the employee. (*McGrory, supra,* 212 Cal.App.4th at p. 1532.) It is not enough that the trier of fact disbelieves the reason given by the employer for its actions; it must believe plaintiff's claim of

---

[3]     Plaintiff asserts the final warning was not actually a final warning because defendant did not have a progressive discipline system. The lack of a progressive discipline system merely means defendant was not required to use less serious disciplinary measures before resorting to the ultimate action of employment termination. It does not mean defendant could not give a "final warning," notifying plaintiff that termination would be the next disciplinary action taken, prior to taking that ultimate step. Plaintiff also argued she interpreted the final warning to pertain only to her interactions with Reyes. The final warning is not reasonably susceptible to that interpretation; the violation it identified was "failing to be courteous and polite at all times to other employees and customers." While "other employees and customers" would include Reyes, it would not be limited to her. In any event, the issue raised by the motion for summary judgment was defendant's actual reason for terminating plaintiff's employment. Plaintiff's interpretation of the final warning is not a fact material to that issue; thus, it cannot raise a triable issue of material fact.

19

intentional discrimination. (*Ibid*.) "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz, supra*, 24 Cal.4th at p. 361.)

Considering defendant's nondiscriminatory explanation for its termination of plaintiff's employment, and the meagerness of the evidence plaintiff presented in an attempt to show intentional discrimination, we conclude the evidence as a whole is insufficient to permit a rational inference that defendant's action was motivated by discriminatory animus. Thus, we conclude plaintiff failed to raise a triable issue of material fact and defendant was entitled to summary judgment.

### *DISPOSITION*

The judgment is affirmed. Defendant is entitled to its costs on appeal.

_____
HILL, P. J.

WE CONCUR:

_____
CORNELL, J.

_____
GOMES, J.

20